

# MARY L. SWAIN
## BUTLER COUNTY CLERK OF COURTS

A T CONTROLS INC
9955 INTERNATIONAL BOULEVARD
CINCINNATI, OH 45246

Z000040239

Date:  February 19, 2021

Case No. : CV 2021 02 0228

REBECCA PALMIERI vs. A T CONTROLS INC

## SUMMONS ON COMPLAINT BY CERTIFIED MAIL
## COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the above named party: You are hereby summoned to answer a complaint that has been filed against you in the Butler County Common Pleas Court by the plaintiff(s) named herein. A copy of the complaint is attached.

You are required to serve upon the plaintiff(s) attorney, or upon the plaintiff(s) if there is no attorney of record, a copy of your answer to the complaint within 28 days after receipt of this summons, exclusive of the day of service. The answer must be filed with this court within three days after service on Plaintiff's attorney.

The name and address of the plaintiff(s) attorney is as follows:

DAUGHTREY, KATHERINE D
FREKING & BETZ,
525 VINE ST SIXTH FL
CINCINNATI, OH 45202

If you fail to appear and defend, judgment by default may be taken against you for the relief demanded in the complaint.

**MARY L. SWAIN**
Butler County Clerk of Courts

*Mary L. Swain*

By: Norma Martin
Deputy Clerk

FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURT

Katherine Daughtrey Neff (0098720) 2021 02:37 P
Elizabeth Asbury Newman (0096921)
Trial Attorneys for Plaintiff 2021 02 0228

## COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO

REBECCA PALMIERI,                  :     Case No.: _____
7513 Hurlinsham Lane               :
Maineville, OH 45039               :     Judge: _____
                                   :
            Plaintiff,             :
                                   :
     v.                            :
                                   :
A-T CONTROLS, INC.,                :     **COMPLAINT WITH JURY DEMAND**
9955 International Blvd.           :     **ENDORSED HEREON**
Cincinnati, OH 45246              :
                                   :
     Also serve:                   :
     National Registered Agents, Inc.   :
     4400 Easton Commons Way, Ste. 125  :
     Columbus, OH 43219            :
                                   :
            Defendant.             :

## PARTIES

1.      Plaintiff Rebecca Palmieri is a citizen and resident of Ohio.

2.      Defendant A-T Controls is a for-profit corporation located in Butler County, Ohio,

and is an employer within the meaning of Ohio law.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction, and venue is proper in Butler County, as the actions

complained of took place within Butler County, Ohio.

4.      The amount in controversy exceeds the jurisdictional minimum for the Court of

Common Pleas.

1

5.      Ms. Palmieri filed a timely charge of discrimination with the Equal Employment Opportunity Commission, and this Complaint is timely filed following her receipt of her Notice of Suit Rights.

6.      Ms. Palmieri has met all procedural and administrative prerequisites for her claims.

## FACTUAL ALLEGATIONS

7.      Plaintiff Rebecca Palmieri is a single mother of two daughters, aged 9 and 6.

8.      Ms. Palmieri began working for Defendant A-T Controls on January 31, 2011.

9.      Defendant hired Ms. Palmieri as an administrative assistant, initially reporting to Patrick Combs.  She served in many functions over the years, eventually attaining the rank of Marketing/Publications/Material Test Report Specialist.  In this role, she reported to Joy Murphy, VP of Marketing.

10.     At the time of her termination, Ms. Palmieri was the longest-serving member of the marketing team, which consisted of her, Ms. Murphy, and Kelly Sankner.

11.     Ms. Sankner was initially hired in June 2017 as a temporary, part-time intern to assist Ms. Palmieri in the publications printing, but by the time Ms. Palmieri terminated, they had the same title.

12.     Ms. Palmieri was a successful employee, as reflected by significant merit raises that she earned in 2012, 2013, 2014, 2015, 2017, and 2018.

13.     In 2018, one of Ms. Palmieri's children was diagnosed with Autism.  To assist in her care, Ms. Palmieri applied for intermittent leave under the Family and Medical Leave Act ("FMLA") on May 1, 2018.  Her application noted that she would need leave to take her daughter to speech therapy, occupational therapy, behavioral therapy, doctor appointments, and to attend IEP meetings at school.

2

14.     On May 3, 2018, Ms. Palmieri met with Ms. Murphy and CFO Steve Wells about her FMLA application. They decided that Ms. Palmieri should be switched from a salaried employee to an hourly employee to better track her unpaid leave time. Thus, in approving Ms. Palmieri for FMLA, Defendant converted her to an hourly employee.

15.     Ms. Palmieri took intermittent leave as needed, communicated her absences (often well in advance), and carefully tracked her time.

16.     On March 9, 2020, the Ohio Department of Health detected the first confirmed cases of COVID-19 in the state.

17.     COVID-19 is an infectious and highly contagious disease caused by the coronavirus.

18.     On March 12, 2020, Governor DeWine closed Ohio schools.

19.     On March 13, 2020, Ms. Palmieri's doctor warned her that she was at increased risk of COVID-19 due to the immunosuppressing medication she takes to treat ankylosing spondylitis ("AS"). The doctor told her that it would be wise for her to work from home for at least the next 30 days.

20.     Ms. Palmieri was diagnosed with AS in 2019.

21.     Ms. Palmieri informed Ms. Murphy and Ms. Sankner of this diagnosis in January 2019.

22.     AS is a chronic inflammatory disease. It mainly affects the spine, but it can also impact other parts of the body, including the shoulders, hips, knees, neck, and pelvis. If left untreated, AS can lead to spinal fusion and limited mobility. Treatment for AS includes immunosuppressive drugs that leave the body vulnerable to other infections.

23.     AS impairs numerous major life activities of Ms. Palmieri. The pain in her back, shoulders, feet, and hips, as well as the stiffness of her back and neck, impair her ability to sleep, stand, sit, and walk.

24.    The pain and stiffness caused by inflammation are at their worst in the morning. While unaffected people may need a few minutes out of bed to be free of pain and stiffness, people with AS can take hours before they get any relief from pain and stiffness.

25.    To slow the progression of AS, Ms. Palmieri takes immunosuppressant medication.

26.    Ms. Palmieri informed Ms. Murphy of her doctor's instruction to work from home as much as possible for the next 30 days.

27.    Rather than direct this request to HR, Ms. Murphy called Brian Wright, the President of A-T, to discuss the requested accommodation.

28.    Ms. Murphy then called Ms. Palmieri back and said that Mr. Wright was on a similar medication but he was going to be working at the office anyway. The clear subtext of this message was that if Mr. Wright could work at the office, so could Ms. Palmieri.

29.    Beginning March 15, 2020, A-T reluctantly allowed Ms. Palmieri to work from home.

30.    Mr. Wells and Ms. Murphy told Ms. Palmieri not to discuss any personal accommodation with other employees.

31.    Upon information and belief, Ms. Palmieri was the only employee working from home the week of March 16.

32.    Ms. Palmieri could perform all of her essential job functions while working remotely.

33.    On March 16, 2020, Ms. Palmieri emailed a doctor's note to Ms. Murphy that reiterated the same information that she provided on March 13.

34.    On March 20, 2020, Governor DeWine announced that he would be ordering a shutdown of all nonessential businesses. That same day, Mr. Wright informed staff that A-T was an essential business that was going to remain open during the pandemic.

35. On March 23, 2020, Ms. Palmieri learned that Ms. Murphy had marked her as out of office for the next thirty days rather than "working from home" on the company calendar. (Out of office status implies that the employee is not working.)

36. Ms. Palmieri told Ms. Murphy that she wanted her coworkers to know that she was indeed working and was not functionally out of the office, and that she would be available to be contacted by phone or email during the work day.

37. That same day, Ms. Palmieri sent an email to all employees, inviting them to share their remote contact info if they wished, so that they could communicate easily during the pandemic.

38. Updating the phone list was one of Ms. Palmieri's job duties.

39. Ms. Murphy told her that Mr. Wright was not happy about the email.

40. Later that week, before Ms. Palmieri shared the list of phone numbers that she had collected, Ms. Murphy reviewed it, made some modifications, and approved it to be sent.

41. On March 26, 2020, Mr. Wright sent an ominous "Business and Situational Update" to all employees. He wrote, "I am extremely disappointed however to report that yesterday, an employee called the Butler County Board of Health and questioned whether we were, in fact, an essential business. The individual who called thought they were calling anonymously." He then wrote that anyone with any concerns should come directly to him, eliminating the possibility of an anonymous complaint, and laying the groundwork for further retaliation.

42. On March 27, 2020, Mr. Wright emailed Ms. Palmieri to chastise her for trying to gather the remote contact information of other employees. He instructed her to get clearance from him before sending "any mass emails." He went on to say, "Your first email said we have 'many' people working from home and we don't. We have very few. I don't want to mislead people."

43. Ms. Palmieri replied, "I was not happy that I was listed on the calendar as OOO during my first week working at home. I feel that working from home should be encouraged as

5

needed during this time, rather than something to hide. If I am working I want my coworkers to be able to reach me."

44.     Later that day, Mr. Wright replied, "I also have an auto-immune condition and on a drug that suppresses my immune system," again implying that if he could work in the office, Ms. Palmieri had no reason to work remotely.

45.     On April 7, 2020, Mr. Wright issued another memo to all employees. He claimed that the company was "faring pretty well" in terms of its business, and that "March revenues were very close to budget and profits not too far off."

46.     On April 8, 2020, Mr. Wells emailed all employees the required notice of employee rights under the Families First Coronavirus Response Act ("FFCRA"), a new law that had just been passed by Congress. The body of the email stated: "By law A-T Controls is required to communicate/post the attached poster explaining the FFCRA. If there are any questions please see your manager or myself."

47.     The FFCRA created two new emergency paid leave requirements in response to the COVID-19 global pandemic: the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family and Medical Leave Expansion Act ("EFMLEA"). *See* 26 CFR Part 826.

48.     On April 9, 2020, Ms. Murphy emailed Ms. Palmieri to ask whether her daughters were returning to their babysitter. The two had a phone conversation later that day about Ms. Palmieri's childcare arrangements.

49.     Ms. Palmieri was honest with Ms. Murphy about the stress of the situation, but that she was still positive and dedicated to work. She explained that the children were quarantined after being potentially exposed by their childcare provider. That provider was not able to accommodate the demands of remote schooling, so Ms. Palmieri was shouldering their online education and care on the days her children were with her.

6

50.     On that April 9 call, Ms. Palmieri also asked Ms. Murphy whether she could reduce her hours with supplemental pay from the FFCRA—in other words, take intermittent leave—under one of the reasons on the employee rights notice: caring for child whose school is closed.

51.     Ms. Murphy replied that Ms. Palmieri could not reduce her hours, but that she could go on leave. By the serious tone of Ms. Murphy's voice, Ms. Palmieri understood that a full leave would be inadvisable and could lead to professional consequences. Ms. Palmieri explained that she did not want to go on leave altogether; she had just wanted to inquire if intermittent leave was an option under the FFCRA to allow her to dedicate more time to remote school demands.

52.     Ms. Murphy did not provide a reason for her conclusion that Ms. Palmieri could not take intermittent leave.

53.     Without the option of intermittent leave, Ms. Palmieri balanced remote school and her work. To do so, she worked longer hours when the children were with their father. When her children were with her, she sometimes worked less to help them with their remote school. As a result, some days she worked over 8 hours and some days she worked less. She tracked her time carefully to be sure she worked 40 hours total per week.

54.     Ms. Murphy was critical and skeptical of Ms. Palmieri's time entries. Defendant did not want to have to pay overtime, which it calculated by the day rather than by the workweek as provided by state and federal law. Ms. Murphy scrutinized Ms. Palmieri's time entries more carefully now that she was working from home, and questioned whether she was actually working exactly 40 hours.

55.     Mr. Wright abruptly furloughed Ms. Palmieri without pay on April 17—the first day following the expiration of her doctor's advice to work from home for 30 days, and approximately one week from her conversation with Ms. Murphy about the possibility of intermittent leave under the FFCRA.

7

56.     Ms. Palmieri was the only office employee furloughed from the Cincinnati location.

57.     The notice of furlough explained that the furlough was expected to last through May 31, 2020.

58.     Ms. Palmieri did not hear anything from management during her furlough. Meanwhile, she had hired a nanny in anticipation of returning to work on June 1.

59.     On May 26, she received, without warning, a letter from Mr. Wright that explained she was being laid off permanently, effective June 1, 2020, "as a result of the difficult business circumstances presented by COVID-19."

## COUNT I
### EFMLEA/FMLA Interference and Retaliation

60.     Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

61.     The EFMLEA is a part of the FFCRA. It requires a covered employer to provide expanded paid family and medical leave to an eligible employee who is "caring for his or her Son or Daughter whose School or Place of Care has been closed for a period of time, whether by order of a State or local official or authority or at the decision of the individual School or Place of Care, or the Child Care Provider of such Son or Daughter is unavailable, for reasons related to COVID-19." 29 C.F.R. § 826.20(a)(1)(v).. 29 C.F.R. § 826.20.

62.     The FMLA's general prohibitions on interference with rights and discrimination, as well as the FMLA's enforcement provisions, apply with equal force to the EFLMEA. 29 C.F.R. § 826.151.

63.     At all relevant times, Defendant was a covered employer under the EFMLEA, as defined by 29 C.F.R. § 826.40.

64.     At all relevant times, Ms. Palmieri was an eligible employee entitled to the protections of the EFMLEA. 29 C.F.R. § 826.30.

65.     Ms. Palmieri's requested use of leave—to care for her children while their school was closed—constitutes a "qualifying reason" for leave under the EFMLEA.  29 C.F.R. § 826.20(a).

66.     Intermittent leave is possible under the EFMLEA through mutual agreement of the employer and the employee.  29 CFR § 826.50.

67.     A request to take leave is protected activity under the FMLA and by extension the EFMLEA.

68.     Defendant interfered with Ms. Palmieri's rights to leave and retaliated against her, in violation of 29 C.F.R. § 826.151, by, including but not limited to, interfering with her right to take intermittent paid family and medical leave for no legitimate reason, furloughing her instead of enabling her to take the leave to which she was entitled, and terminating her employment to avoid having to accommodate her requests for leave.

69.     By engaging in the foregoing conduct, Defendant has interfered with, restrained, and/or denied Ms. Palmieri's exercise of or attempt to exercise her FMLA rights, in violation of 29 C.F.R. § 826.151(a) and 29 U.S.C. § 2615(a)(1).

70.     Defendant's actions were willful and taken in bad faith; Defendant did not have reasonable grounds to believe its actions did not violate the FFCRA and its attendant regulations.

71.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Palmieri has suffered damages and is entitled to recovery.

## COUNT II
### EPSLA/FLSA Interference and Retaliation

72.     Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

73.     The EPSLA is a part of the FFCRA.  It requires a covered employer to provide paid sick leave to an eligible employee who is "caring for his or her Son or Daughter whose School or Place of Care has been closed for a period of time, whether by order of a State or local official or

9

authority or at the decision of the individual School or Place of Care, or the Child Care Provider of such Son or Daughter is unavailable, for reasons related to COVID-19." 29 C.F.R. § 826.20(a)(1)(v).

74.     The enforcement provisions of the Fair Labor Standards Act (FLSA) apply to EPSLA, such that an employer who retaliates against an employee for invoking the statute would be found to have violated § 15(a)(3) of the FLSA and would be subject to its penalties, including but not limited to liquidated damages. 29 C.F.R. § 826.150.

75.     Likewise, an employer who fails to provide paid sick leave under the EPSLA is considered to have failed to pay the minimum wage under the FLSA and is subject to its penalties, including but not limited to liquidated damages. 29 CFR § 826.150.

76.     At all relevant times, Defendant was a covered employer, as defined by the EPSLA. 29 CFR § 826.40.

77.     At all relevant times, Ms. Palmieri was an eligible employee as defined by the EPSLA. 29 C.F.R. § 826.30.

78.     Intermittent leave was possible under the EPSLA through mutual agreement of the employer and the employee. 29 CFR § 826.50.

79.     Ms. Palmieri's requested use of intermittent paid sick leave—to care for her children while their school was closed—was a "qualifying reason" for leave under the EPSLA. 29 C.F.R. § 826.20(a)(1)(v).

80.     A request to take leave is protected activity under the EPSLA.

81.     Defendant interfered with Ms. Palmieri's rights to leave and retaliated against her, in violation 29 C.F.R. § 826.150, by, including but not limited to, interfering with her right to take intermittent paid sick leave for no legitimate reason, furloughing her instead of enabling her to take the leave to which she was entitled, and terminating her employment to avoid having to accommodate her requests.

82. By engaging in the foregoing conduct, Defendant has interfered with, restrained, and/or denied Ms. Palmieri's exercise of or attempt to exercise her EPSLA rights, in violation of 29 C.F.R. § 826.151(a) and 29 U.S.C. § 215(a)(3).

83. Defendant's actions were taken in bad faith, and Defendant did not have reasonable grounds to believe its actions did not violate the FFCRA and its attendant regulations.

84. As a direct and proximate result of Defendant's unlawful conduct, Ms. Palmieri has suffered damages and is entitled to recovery.

## COUNT III
### Retaliation - ADA

85. Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

86. Ms. Palmieri is a qualified individual with a real and/or perceived disability as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, as amended.

87. Ms. Palmieri engaged in protected activity pursuant to 42 U.S.C. § 12203 by seeking reasonable accommodations and by opposing Mr. Wright's retaliatory attitude toward her accommodation requests.

88. Defendant retaliated against Ms. Palmieri for engaging in protected activity by terminating her employment.

89. 78. Defendant acted with malice and/or reckless indifference to Ms. Palmieri's federally protected right to be free from such retaliation.

90. 79. As a direct and proximate result of Defendant's unlawful retaliation, Ms. Palmieri has been injured and is entitled to judgment and compensation pursuant to the ADA.

## COUNT IV
### Retaliation - R.C. Chapter 4112

91. Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

11

92. Ms. Palmieri is a qualified individual with a real and/or perceived disability as defined by R.C. § 4112.01(A)(13).

93. Ms. Palmieri engaged in protected activity pursuant to R.C. § 4112.02(I) by requesting reasonable accommodations and by opposing Mr. Wright's retaliatory attitude toward her accommodation requests.

94. Defendant retaliated against Ms. Palmieri for engaging in protected activity by terminating her employment.

95. Defendant's retaliatory conduct was willful, intentional, wanton, malicious, and in conscious disregard of Ms. Palmieri's rights.

96. As a direct and proximate result of Defendant's unlawful retaliation, Ms. Palmieri has been injured and is entitled to judgment and compensation pursuant to R.C. § 4112.99.

**WHEREFORE**, Plaintiff Rebecca Palmieri requests relief against Defendant as follows:

a)      That Plaintiff be awarded all lost pay and benefits;

b)      That Plaintiff be awarded compensatory damages;

c)      That Plaintiff be awarded liquated damages;

d)      That Plaintiff be awarded punitive damages;

e)      That Plaintiff be awarded reasonable attorney's fees and costs;

f)      That Plaintiff be awarded pre-judgment and post-judgment interest;

g)      That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than compensation over separate tax years; and

h)      That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

Respectfully submitted,

*/s/ Katherine Daughtrey Neff*
Katherine Daughtrey Neff (0082245)
Elizabeth Asbury Newman (0096921)
Trial Attorneys for Plaintiff
FREKING MYERS & REUL
600 Vine Street, Ninth Floor
Cincinnati, OH 45202
PH: 513-721-1975 | FAX: 513-651-2570
*kneff@fmr.law*
*enewman@fmr.law*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Katherine Daughtrey Neff*

13

 **UNITED STATES POSTAL SERVICE.**

# CV 2021 02 0228

Date Produced: 03/01/2021

Butler County, Ohio Clerk of Courts:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 9403 8300 0032 6180 74. Our records indicate that this item was delivered on 02/24/2021 at 11:04 a.m. in COLUMBUS, OH 43224. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

This USPS proof of delivery is linked to the customers mail piece information on file as shown below:

A T CONTROLS INC.
NATIONAL REGISTERED AGENTS, INC.
4400 EAST COMMONS WAY SUITE 125
COLUMBUS OH 43219

USPS MAIL PIECE TRACKING NUMBER: 42043219921489019403830000032618074
MAILING DATE: 02/19/2021
DELIVERED DATE: 02/24/2021
Case Number: CV 2021 02 0228
Tracking Number: Z000040238
Clerk By: Norma Martin

MAIL PIECE DELIVERY INFORMATION:

A T CONTROLS INC
NATIONAL REGISTERED AGENTS, INC.
4400 EAST COMMONS WAY SUITE 125
COLUMBUS OH 43219

MAIL PIECE TRACKING EVENTS:

| Date/Time | Event | Location |
|---|---|---|
| 02/19/2021 14:45 | PRE-SHIPMENT INFO SENT: USPS AWAITS ITEM | HAMILTON, OH 45011 |
| 02/22/2021 21:25 | ORIGIN ACCEPTANCE | HAMILTON, OH 45011 |
| 02/22/2021 22:40 | PROCESSED THROUGH USPS FACILITY | CINCINNATI, OH 45234 |
| 02/23/2021 11:15 | PROCESSED THROUGH USPS FACILITY | COLUMBUS, OH 43218 |
| 02/24/2021 10:05 | ARRIVAL AT UNIT | COLUMBUS, OH 43224 |
| 02/24/2021 10:16 | OUT FOR DELIVERY | COLUMBUS, OH 43219 |
| 02/24/2021 11:04 | DELIVERED | COLUMBUS, OH 43224 |

FILED BUTLER CO.
COURT OF COMMON PLEAS

MAR 0 2 2021

MARY L. SWAIN
CLERK OF COURTS

# Courtview Tracking No.: Z000040238

FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
03/23/2021 01:18 PM
CV 2021 02 0228

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| REBECCA PALMIERI, | : | Case No. CV 2021 02 0228 |
| | : | |
| Plaintiff, | : | Judge Spaeth |
| | : | |
| v. | : | |
| | : | |
| A-T CONTROLS, INC., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT, A-T CONTROLS, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant, A-T Controls, Inc. ("Defendant" or "ATC"), by and through counsel, hereby states for its answer to the complaint of Plaintiff, Rebecca Palmieri ("Plaintiff"), as follows:

1.      Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 1 of the complaint.

2.      Defendant admits paragraph 2 of the complaint.

3.      Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 3 of the complaint.

4.      Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 4 of the complaint.

5.      Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 5 of the complaint.

6.      Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 6 of the complaint.

7.      Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 7 of the complaint.

8.      Defendant admits paragraph 8 of the complaint.

9.      Defendant admits Plaintiff was hired as an administrative assistant and that she was assigned various duties, including the creation of marketing related materials and that she reported to Ms. Murphy, and denies any other allegation or implication of paragraph 9 of the complaint.

10.     Defendant admits paragraph 10 of the complaint.

11.     Defendant admits Ms. Sanker was hired by Defendant in 2017 but denies any other allegation or implication set forth in paragraph 11 of the complaint.

12.     Defendant admits that Plaintiff's compensation increased periodically over the stated time and denies any other allegation or implication set forth in paragraph 12 of the complaint.

13.     Defendant lacks knowledge to admit or deny when Plaintiff's child was diagnosed, admits Plaintiff requested and was granted intermittent leave under the FMLA, admits that any written document will speak for itself, and denies any other allegation or implication set forth in paragraph 13 of the complaint.

14.     Defendant admits that Plaintiff was converted to an hourly wage but denies any other allegation or implication of paragraph 14 of the complaint.

15.     Defendant admits Plaintiff periodically claimed leave under FMLA and that communication occurred concerning her leave and denies any other allegation or implication set forth in paragraph 15 of the complaint.

16.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 16 of the complaint.

17.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 17 of the complaint but admits these assertions are widely reported.

18.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 18 of the complaint.

19.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 19 of the complaint.

20.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 20 of the complaint.

21.     Defendant denies paragraph 21 of the complaint.

22.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 22 of the complaint.

23.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 23 of the complaint.

24.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 24 of the complaint.

25.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 25 of the complaint.

26.     Defendant admits Plaintiff produced a form of a written physician letter which document will speak for itself and denies any other allegation or implication in paragraph 26 of the complaint.

27.     Defendant admits that Ms. Murphy and Mr. Wright spoke and denies any other allegation or implication set forth in paragraph 27 of the complaint.

28.     Defendant admits that Ms. Murphy told Plaintiff that Mr. Wright was on the same medication and denies any other allegation or implication of paragraph 28 of the complaint.

29.     Defendant admits approving Plaintiff's request to work from home and denies any other allegation or implication set forth in paragraph 29 of the complaint.

30.     Defendant admits paragraph 30 of the complaint.

31.     Defendant admits Plaintiff was the only employee working remotely during the first week and denies any other allegation or implication of paragraph 31 of the complaint.

32.     Defendant denies paragraph 32 of the complaint.

33.     Defendant admits Plaintiff produced a form of a written physician letter which document will speak for itself and denies any other allegation or implication in paragraph 33 of the complaint.

34.     Defendant admits that any reported public statements by the Governor will speak for themselves and admit that Mr. Wright sent an email to employees that will speak for itself and denies any other allegation or implication of paragraph 34 of the complaint.

35.     Defendant denies paragraph 35 of the complaint.

36.     Defendant admits paragraph 36 of the complaint.

37.     Defendant admits the referenced written document will speak for itself and therefore denies Plaintiff's characterization of the same and denies any other allegation or implication set forth in paragraph 37 of the complaint.

38.     Defendant denies paragraph 38 of the complaint.

39.     Defendant admits paragraph 39 of the complaint.

40.     Defendant denies paragraph 40 of the complaint.

41.     Defendant admits the referenced written document will speak for itself and therefore denies Plaintiff's characterization of the same and denies any other allegation or implication set forth in paragraph 41 of the complaint.

42.     Defendant admits the referenced written document will speak for itself and therefore denies Plaintiff's characterization of the same and denies any other allegation or implication set forth in paragraph 42of the complaint.

43.     Defendant admits the referenced written document will speak for itself and denies any other allegation or implication set forth in paragraph 43 of the complaint.

44.     Defendant admits the referenced written document will speak for itself and therefore denies Plaintiff's characterization of the same and denies any other allegation or implication set forth in paragraph 44 of the complaint.

45.     Defendant admits that the referenced written document will speak for itself and denies any other allegation or implication set forth in paragraph 45 of the complaint.

46.     Defendant admits the referenced written document will speak for itself and denies any other allegation or implication set forth in paragraph 46 of the complaint.

47.     Defendant admits to the existence of the public laws and denies any other allegation or implication set forth in paragraph 47 of the complaint.

48.     Defendant admits Plaintiff and Ms. Murphy spoke by telephone and admits the referenced written document will speak for itself and therefore denies Plaintiff's characterization of the same and denies any other allegation or implication set forth in paragraph 48 of the complaint.

49.     Defendant admits Plaintiff and Ms. Murphy spoke by telephone but denies Plaintiff's characterization of the same and denies any other allegation or implication set forth in paragraph 49 of the complaint.

50.     Defendant admits Plaintiff and Ms. Murphy spoke by telephone but denies Plaintiff's characterization of the same and denies any other allegation or implication set forth in paragraph 50 of the complaint.

51.     Defendant admits Plaintiff and Ms. Murphy spoke by telephone about various matters, including leave under the FFCRA, but denies Plaintiff's characterization of the same and denies any other allegation or implication set forth in paragraph 51 of the complaint.

52.     Defendant admits Plaintiff and Ms. Murphy spoke by telephone but denies Plaintiff's characterization of the conversation and denies any other allegation or implication set forth in paragraph 52 of the complaint.

53.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 53 of the complaint concerning Plaintiff's life at home and denies the allegation concerning Plaintiff's work time keeping.

54.     Defendant admits to reviewing Plaintiff's time entries in the ordinary course of supervision and denies any other allegation or implication set forth in paragraph 54 of the complaint.

55.     Defendant admits that Plaintiff was put on furlough and denies any other allegation or implication set forth in paragraph 55 of the complaint.

56.     Defendant denies paragraph 56 of the complaint.

57.     Defendant admits the referenced written document will speak for itself and denies any other allegation or implication set forth in paragraph 57 of the complaint.

58.     Defendant admits paragraph 58 of the complaint.

59.     Defendant admits the referenced written document will speak for itself and denies any other allegation or implication set forth in paragraph 59 of the complaint.

## COUNT I

60.     Defendant adopts its previous answers as if restated here.

61.     Paragraph 61 is a characterization or conclusion of law that does not require an admission or denial by Defendant. To the extent it alleges or implies any wrongdoing by Defendant, the same is specifically denied.

62.     Paragraph 62 is a characterization or conclusion of law that does not require an admission or denial by Defendant. To the extent it alleges or implies any wrongdoing by Defendant, the same is specifically denied.

63.      Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 63 of the complaint.

64.      Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 64 of the complaint.

65.      Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 65 of the complaint.

66.     Paragraph 66 is a characterization or conclusion of law that does not require an admission or denial by Defendant. To the extent it alleges or implies any wrongdoing by Defendant, the same is specifically denied.

67.     Paragraph 67 is a characterization or conclusion of law that does not require an admission or denial by Defendant. To the extent it alleges or implies any wrongdoing by Defendant, the same is specifically denied.

68.     Defendant denies the allegations or implications of paragraph 68 of the complaint.

69.     Defendant denies the allegations or implications of paragraph 69 of the complaint.

70.     Defendant denies the allegations or implications of paragraph 70 of the complaint.

71.     Defendant denies the allegations or implications of paragraph 71 of the complaint.

## COUNT II

72.     Defendant adopts its previous answers as if restated here.

73.     Paragraph 73 is a characterization or conclusion of law that does not require an admission or denial by Defendant. To the extent it alleges or implies any wrongdoing by Defendant, the same is specifically denied.

74.     Paragraph 74 is a characterization or conclusion of law that does not require an admission or denial by Defendant. To the extent it alleges or implies any wrongdoing by Defendant, the same is specifically denied.

75.     Paragraph 75 is a characterization or conclusion of law that does not require an admission or denial by Defendant. To the extent it alleges or implies any wrongdoing by Defendant, the same is specifically denied.

76.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 76 of the complaint.

77.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 77 of the complaint.

78.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 78 of the complaint.

79.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 79 of the complaint.

80.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 80 of the complaint.

81.     Defendant denies the allegations or implications of paragraph 81 of the complaint.

82.     Defendant denies the allegations or implications of paragraph 82 of the complaint.

83.     Defendant denies the allegations or implications of paragraph 83 of the complaint.

84.     Defendant denies the allegations or implications of paragraph 84 of the complaint.

## COUNT III

85.     Defendant adopts its previous answers as if restated here.

86.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 86 of the complaint.

87.     Defendant denies the allegations or implications of paragraph 87 of the complaint.

88.     Defendant denies the allegations or implications of paragraph 88 of the complaint.

89.     Defendant denies the allegations or implications of paragraph 89 of the complaint.

90.     Defendant denies the allegations or implications of paragraph 90 of the complaint.

## COUNT IV

91.     Defendant adopts its previous answers as if restated here.

92.     Defendant lacks the knowledge or information sufficient to either admit or deny the allegations of paragraph 92 of the complaint.

93.     Defendant denies the allegations or implications of paragraph 93 of the complaint.

94.     Defendant denies the allegations or implications of paragraph 94 of the complaint.

95.     Defendant denies the allegations or implications of paragraph 95 of the complaint.

96.     Defendant denies the allegations or implications of paragraph 95 of the complaint.

## FIRST AFFIRMATIVE DEFENSE

97.     Plaintiff's complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

98.     Plaintiff has failed to exhaust administrative remedies for some or all of her claims.

## THIRD AFFIRMATIVE DEFENSE

99.    The court lacks jurisdiction over some or all of Plaintiff's claims.

## FOURTH AFFIRMATIVE DEFENSE

100.    Defendant affirmatively alleges that any and all adverse employment actions taken against Plaintiff were based on legitimate, non-discriminatory, non-retaliatory reasons.

## FIFTH AFFIRMATIVE DEFENSE

101.    Plaintiff's damage claims are barred in whole or in part by reason of her failure to mitigate alleged damages and/or the doctrine of after-acquired evidence; further, in the alternative, to the extent Plaintiff has mitigated here damages, Defendant is entitled to a credit or set-off.

## SIXTH AFFIRMATIVE DEFENSE

102.    Defendant affirmatively alleges that Plaintiff's employment would have been terminated regardless of whether she sought leave under the FMLA, FFCRA, EPSLA, or EFMLEA.

## SEVENTH AFFIRMATIVE DEFENSE

103.    Defendant affirmatively alleges that Plaintiff's employment would have been terminated regardless of whether Plaintiff is determined to be an individual with a disability as defined by the ADA.

## EIGHTH AFFIRMATIVE DEFENSE

104.    Defendant affirmatively alleges that all actions challenged by the Plaintiff were taken in good faith, and with reasonable grounds for believing that the actions did not violate the FMLA, FFCRA, EPSLA, EFMLEA, or the ADA, as amended, and therefore any claim for liquidated damages is barred.

## NINTH AFFIRMATIVE DEFENSE

105.    Defendant reserves the right to assert additional defenses, affirmative or otherwise, upon further investigation and discovery into the matters alleged.

WHEREFORE, Defendant A-T Controls, Inc., requests that the complaint of Plaintiff made against it be dismissed with prejudice and judgment entered in Defendant's favor and that Defendant recover its costs in this action and for all such other legal or equitable relief to which it may be entitled.

Counsel:                                              Respectfully submitted,

Julie K. Hopkins, Esq.

/s/ William K. Flynn
William K. Flynn (0029536)
STRAUSS TROY CO., LPA
150 E. Fourth Street, 4th Floor
Cincinnati, Ohio 45202-4018
Telephone No.:  (513) 621-2120
Facsimile No.:  (513) 629-9426
Email: wkflynn@strausstroy.com
*Counsel for Defendant, A-T Controls, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing Answer was served by ordinary U.S. mail, postage prepaid, this 23rd day of March, 2021, upon the following:

Katherine Daughtrey Neff, Esq.
Elizabeth Asbury Newman, Esq.
Freking Myers & Reul
600 Vine Street, Ninth Floor
Cincinnati, Ohio 45202
*Counsel for Plaintiff, Rebecca Palmieri*

/s/ William K. Flynn
William K. Flynn (0029536)

15132812_1.docx

-11-